Whitaker, Judge,
delivered the opinion of the court:
The plaintiff brings this suit for an alleged taking by the .defendant of the river beds of the Arkansas, Cimarron and .Canadian Rivers which lie within the boundaries of the Creek territory.
In 1852 the United States executed a patent to the Creek Nation covering lands now within the boundaries of the State of Oklahoma. These lands included a certain part of the Arkansas, Cimarron and Canadian Rivers, which rivers have been held to be or are nonnavigable within the Creek lands. Subsequently it became desirable to abolish the tribal government and to dispose of all the Creek lands, except those reserved for specified purposes, either by the allotment of them to the Creeks in severalty, or by the sale of them and the distribution of the proceeds among the members of the tribe. To accomplish this, two agreements were made with the Creek Nation, one in 1901 and the other in 1902. In pursuance to these agreements the United States undertook to allot to each member of the tribe 160 acres of land of the value of $6.50 per acre. If the lands allotted did not «equal this value, it was provided that the allottee would be .allotted additional lands or be given money of the tribe to make up the deficiency. The allotments were to be made, and were made, in accordance with surveys made by the •defendant. These surveys followed the meander lines of the three above-mentioned rivers.
At the time allotments were made to members of the tribe .■selecting allotments on the banks of these rivers, the river beds thereof were of no known value, but subsequently oil *273 was discovered thereunder. Thereupon the State of Oklahoma claimed the river beds of the Arkansas and Cimarron rivers on the theory that they were navigable streams, and issued leases on them for the drilling of oil. The defendant, as the trustee and guardian of the Creek Nation, filed a bill in the United States District Court for Oklahoma alleging that the streams were not navigable and, therefore, that the State of Oklahoma had no title thereto, but that, on the contrary, the title was in the Creek Nation. Certain of the individual members of the tribe holding allotments on the banks of these rivers and other adjoining landowners intervened, claiming the lands for themselves. The District Court, following a decision of the Supreme Court of the United States in Brewer Oil Co. v. United States, 260 U. S. 77, held that the Arkansas and Cimarron Rivers were nonnavigable, and further held that the Creek Nation had no title to the lands, but that the adjoining landowners held title to the thread of the stream. This was affirmed by the Eighth Circuit Court of Appeals in the case of United States v. Hayes, 20 F. (2d) 873.
. The plaintiff says in its petition that when the allotments were made to.members of the tribe selecting land on the banks of these rivers it was the intention to reserve title to the rivers in the Creek Nation, and that it was not the intention of the parties to convey to the allottees title to the thread of .the stream, but only to the meander lines thereof, and that the defendant was negligent in having drawn the patents so as to give title to the thread of the stream. Therefore, it says the defendant is liable to it for a taking of its lands.
The intention of the parties in making these allotments was the issue before the court in United States v. Mayes, supra. In that case the United States admitted that under the common law “a conveyance by meander lines along a nonnavigable stream would, without more as to intention of the parties, carry title to the stream thread”; but, it contended that the intention of the parties must govern the construction of the patents, and that that intention was that the meander lines were to be the boundary lines of the lands *274 conveyed. The court recognized that the intention of the parties must govern and proceeded quite at length to discuss-the evidence as to what that intention was. It concluded that it was not the intention of the parties to reserve to the-Creek Nation title to the river beds of the streams, or to any of its lands, but that it was intended to convey title to the adjoining landowners to the thread of the stream. If this-was the intention of the parties, plaintiff’s present case, of course, fails.
We are entirely satisfied with the discussion of this question by the Eighth Circuit Court of Appeals in the case of United States v. Hayes, supra. We agree with that court that there was no evidence before it of any intention on the-part of the Nation to reserve to itself title to any of its lands,, but that, on the contrary, it was the evident intention of all parties that all of its lands should be disposed of and that the Nation should go out of existence and its citizens should become citizens of the United States.
But the plaintiff says the additional proof introduced for the first time in this case shows that this was not the intention of the parties. This proof is that riparian rights were not discussed when the allotments were made. That the title of a riparian owner is presumed to extend to the thread of a nonnavigable stream, we have no doubt, was not mentioned, because the river beds, in the light of what was then known, were valueless, except to the adjoining landowner, and no thought would have been given to it; or, if thought of, it would never have been assumed that the Nation meant to reserve it. Had this matter been mentioned, we cannot conceive that it would have made the slightest difference to the Nation or its members whether the title stopped at low watermark or went to the thread of the stream.
The fact that it was not discussed is the strongest indication that there was no intention on the part of the grantor to reserve title to it. Would it not be supposed that when the allottee received his patent to the land he took it for granted that he received with it the right to use the adjoining river, that he should have the right of ingress and egress thereby, that he might water his stock therein, and otherwise use and *275 enjoy it? Did the Creek Nation intend to deprive him thereof, as it would have been able to do had it retained title to the river ? We can think of no reason why it should have..
The other fact, that it was the intention that an allottee-should receive only 160 acres of a value of $6.50 per acre, and that if the river beds were included he would receive more-than his share in value, does not evidence an intention to exclude the river beds, because it was not then known the-river beds were of any value. Their inclusion would not have given to the allottee a greater value than 160 acres at $6.50 per acre. There is nothing in the agreements to indicate an allottee should receive 160 acres and no more. If' his 160 acres did not have a value of 160 times $6.50, he was to be given additional acreage or money to make up the-deficiency.
We find nothing in the evidence to indicate that the Nation: intended to reserve title to the river beds. We do not mean, to indicate that if there had been such an intention the plaintiff would be entitled to recover. We hold merely that in the absence of such an intention, it is clearly not entitled to-judgment. Plaintiff’s petition must therefore be dismissed. It is so ordered.
Littleton, Judge; Green, Judge; and Whaley, Chief Justice, concur.